IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| AIR CENTURY, S.A., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-08-1324-D |
| | ) | |
| ATLANTIQUE AIR ASSISTANCE; and | ) | |
| INSURED AIRCRAFT TITLE SERVICE, | ) | |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |

**O R D E R**

Before the Court is the motion of Defendant Atlantique Air Assistance ("Atlantique") to dismiss the action against it pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction and, alternatively, based on the doctrine of *forum non conveniens* [Doc. No. 23]. Following a 60-day period of jurisdictional discovery, Atlantique filed a supplemental brief [Doc. No. 26]; Plaintiff filed its response [Doc. No. 27]; and Atlantique filed a reply [Doc. No. 30], which was partially stricken. *See* Order Granting Pl.'s Mot. Strike [Doc. No. 33]. Defendant Insured Aircraft Title Services ("IATS") has not opposed the motion within the time period for filing a response. Thus, the motion is fully briefed and at issue.

The action against Atlantique concerns the alleged breach of a contract for the sale of an Embraer Air 120 aircraft. Subject matter jurisdiction rests on diversity of citizenship under 28 U.S.C. § 1332. Plaintiff Air Century, S.A. is a citizen of the Dominican Republic, where it was incorporated and has its principal place of business. Atlantique is a citizen of France, where it was incorporated and has its principal place of business. IATS is a citizen of Delaware, where it was incorporated, and Oklahoma, where it has its principal place of business. Atlantique was the

proposed seller of the aircraft; Plaintiff was the intended buyer; and IATS was the escrow agent. A copy of the alleged contract, entitled "Heads of Agreement," appears as Exhibit 1 to the Complaint. The contract provided for Plaintiff's payments to be made to IATS in Oklahoma. It provided for Atlantique's delivery of the aircraft to occur in France and provided that the contract would be construed and governed by French law.

The Complaint alleges Plaintiff made a timely payment of the initial deposit to IATS as required by the contract but Atlantique failed to deliver the aircraft by the required date. The Complaint also alleges Atlantique "wrongfully, intentionally and/or negligently represented and misrepresented to IATS that [Plaintiff's] deposit was non-refundable, . . . and wrongfully obtained [Plaintiff's] deposit." *See* Compl. [No. 1] at 6, ¶ 27. As to IATS, the Complaint alleges the existence of an escrow agreement and a contractual and fiduciary duty of IATS to safeguard Plaintiff's deposit until the sales contract was fully performed. The Complaint asserts that IATS failed to return Plaintiff's initial deposit upon a proper and timely demand but, instead, paid the deposit to Atlantique without prior notice to Plaintiff, in breach of the escrow agreement and IATS's fiduciary duty and as a result of IATS's negligence. Plaintiff seeks a judgment against both defendants for actual and consequential damages in an amount in excess of the deposit. IATS has answered and filed a cross-claim against Atlantique to be indemnified for any liability to Plaintiff. Atlantique answered the Complaint and the cross-claim and then filed its motion to dismiss.

By its motion, Atlantique asserts that personal jurisdiction does not exist because it had insufficient contacts with the State of Oklahoma for a suit concerning the alleged sales contract here, and because there is no factual basis for an exercise of general jurisdiction. In addition, Atlantique asserts that an adequate alternative forum exists in the Commercial Court of Nantes, France. Atlantique relies on the case record, the Declaration of André Besseau (its president and chief

executive officer), evidence of electronic messages exchanged between Plaintiff and Atlantique during negotiations, and IATS's answers to requests for admissions. Plaintiff has responded in kind, relying on evidence of additional electronic messages exchanged between the parties before and after the alleged contracts were made, the Declaration of Omar Chahin (its president), the parties' initial disclosures, and Atlantique's discovery responses. Plaintiff contends that specific jurisdiction exists for its action against Atlantique in this forum. Plaintiff also contends Atlantique has failed to establish that a French court would exercise jurisdiction over all the parties, including IATS, and that French law would govern a dispute concerning the escrow agreement.

## Personal Jurisdiction

### A.     Standard of Decision

Plaintiff has the burden of establishing personal jurisdiction. *Intercon, Inc. v. Bell Atl. Internet Solutions*, 205 F.3d 1244, 1247 (10th Cir. 2000). Where, as here, the issue is decided solely on the basis of affidavits and written materials, Plaintiff "need only make a prima facie showing that jurisdiction exists ." *Id*. (internal quotation omitted); *see Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 456 (10th Cir. 1996); *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1075 (10th Cir. 1995); *see also AST Sports Science, Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1057 (10th Cir. 2008). At this stage, the Court must accept uncontroverted factual allegations as true and must resolve all factual disputes in Plaintiff's favor. *Intercon*, 205 F.3d at 1247; *Kuenzle*, 102 F.3d at 456; *Far West*, 46 F.3d at 1075.

To establish personal jurisdiction of a nonresident defendant, "a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *Far West*, 46 F.3d at 1074 (emphasis omitted). Under Oklahoma law, the personal jurisdiction inquiry is simply a federal due

3

process analysis. *Intercon*, 205 F.3d at 1247; *Rambo v. American S. Ins. Co.*, 839 F.2d 1415, 1416 (10th Cir. 1988). The familiar due process standard requires "minimum contacts" between the defendant and the forum state and a finding that the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 297 (1980); *Intercon*, 205 F.3d at 1247.

A plaintiff may satisfy the "minimum contacts" standard by establishing specific jurisdiction, which exists "if a 'defendant has "purposefully directed" his activities at residents of the forum . . . *and* the litigation results from alleged injuries that "arise out of or relate to" those activities.'" *Kuenzle*, 102 F.3d at 455 (quoting *Burger King*, 471 U.S. at 472) (emphasis added in *Kuenzle*); *see Intercon*, 205 F.3d at 1247; *OMI Holdings, Inc. v. Royal Ins. Co.*, 149 F.3d 1086, 1091 (10th Cir. 1998).[1] To satisfy the first prong, the plaintiff must demonstrate the defendant "'purposefully directed' its activities at the forum state . . . or 'purposely availed' itself of the privilege of conducting activities . . . in the forum state." *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2008); *see also Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 112, (1987). Purposeful availment generally requires affirmative conduct by the defendant that creates a substantial connection to the state; unilateral activity of others is insufficient. *Bell Helicopter Textron, Inc. v. Heliqwest Int'l, Ltd.*, 385 F.3d 1291, 1296 (10th Cir. 2004); *Far West*, 46 F.3d at 1075; *see Dudnikov*, 514 F.3d at 1073-74; *OMI Holdings*, 149 F.3d at 1092.

---

[1] In this case, Plaintiff does not rely on general personal jurisdiction, which requires "continuous and systematic" contacts between a defendant and the forum state. *See Bell Helicopter Textron, Inc. v. Heliqwest Int'l., Ltd.*, 385 F.3d 1291, 1296 (10th Cir. 2004); *OMI Holdings*, 149 F.3d at 1091.

**B.     Analysis**

   **1.     Minimum Contacts**

Plaintiff's action against Atlantique arises from a proposed sales transaction to be performed partly in Oklahoma and partly in France. Plaintiff relies on the following sale-related activities of Atlantique to establish specific jurisdiction in Oklahoma: During negotiations for the sale of an Embraer 120 aircraft, serial number 104 ("SN 104") in early February, 2008, Plaintiff asked what escrow agent would be used and asked whether its escrow agent, IATS, was acceptable. Atlantique responded that it had previously used an escrow agent in Oklahoma and requested contact information for Plaintiff's agent. Atlantique then initiated contact with IATS to inquire about its escrow services. In response to Atlantique's inquiry, IATS provided by email a copy of its wire transfer instructions and information about its services. IATS stated it would provide title reports from FAA records, collect necessary documents, and hold all documents and funds in escrow pending instructions and authorizations. In subsequent email communications, Atlantique determined the amount of IATS's fee and agreed to pay it. Atlantique opened an escrow account with IATS and paid the required fee. However, SN 104 was subsequently offered to another purchaser.

In late February, 2008, Atlantique proposed to sell a different Embraer 120 aircraft, serial number 253 ("SN 253"), to Plaintiff. On March 25, 2008, Atlantique asked Plaintiff to sign the "Heads of Agreement" and pay the deposit, and asked IATS to open an escrow account regarding SN 253. The Heads of Agreement was signed by both parties on March 27, 2008. The document specifically provides: "Each payment to be made by the Buyer to the Seller under or pursuant to this Heads of Agreement shall be made in immediately available funds to the following account: Insured

5

Aircraft Title Services at Oklahoma City, contact Jacinda Janko." *See* Compl., Ex. 1 [Doc. 1] at 11. The parties agreed to use IATS as the escrow agent with respect to both the payments of funds and delivery of title documents. Atlantique specifically authorized IATS to act on its behalf in disbursement of the agreed funds. Under the alleged sales contract and escrow agreement, these acts were to be performed in Oklahoma: payments of funds; transfer of title; and provision of escrow services.

Pursuant to the alleged contract and IATS's wire instructions, Plaintiff paid the required deposit of $160,000.00 to IATS in Oklahoma City. Plaintiff intended that the deposit would not be transferred to Atlantique until Atlantique had performed the alleged contract by delivering the aircraft, SN 253, to Plaintiff in the required condition with a clear title by the delivery date. On March 28, 2008, Atlantique requested by email to IATS confirmation of Plaintiff's payment of the deposit. IATS issued the confirmation by email the same day, stating that IATS considered the deposit refundable until it received an executed purchase agreement outlining the terms and conditions regarding the funds held in escrow. IATS also informed Atlantique that, should a deposit become disputed, the parties to the executed agreement would hold IATS harmless and share equally in any fees and expenses incurred by IATS. Atlantique responded by stating that the deposit was non-refundable under the parties' agreement and forwarded a copy of the Heads of Agreement. After receiving the Heads of Agreement, IATS modified the deposit confirmation to state that the deposit was non-refundable. The Heads of Agreement contemplated that a final purchase agreement would be prepared, but none was ever executed. Atlantique also failed to tender delivery of the aircraft, SN 253, in the required condition by the required delivery date. On May 8, 2008, Atlantique represented by email to IATS in Oklahoma City that Plaintiff had breached the Heads

of Agreement and inquired how to obtain payment of the deposit. In response to an email from IATS, Atlantique also sent wire transfer instructions to IATS in Oklahoma City to obtain payment of Plaintiff's deposit. Later in May, 2008, Plaintiff notified IATS by email that Atlantique had failed to deliver the aircraft and to perform the sales contract, and requested a refund of the deposit. By email dated May 23, 2008, IATS informed Plaintiff that its deposit had been transferred to Atlantique on May 9, 2008, based on Atlantique's representation to IATS in Oklahoma City that the deposit was non-refundable. Atlantique asserted by email to IATS in Oklahoma City that the Heads of Agreement rendered the deposit non-refundable on March 28, 2008, and that Antique was entitled to the deposit.

From Plaintiff's recitation of these alleged facts, which are supported by the evidence submitted by Plaintiff and taken as true, the Court finds Plaintiff has made a minimally sufficient showing of specific jurisdiction over Atlantique for an action related to the alleged sales transaction and escrow agreement in Oklahoma. As noted by the court of appeals, "[t]he application of [due process] standards to contracts made between citizens of different states is not without difficulty" but is guided by the Supreme Court's opinion in *Burger King. See Rainbow Travel Service, Inc. v. Hilton Hotels Corp.*, 896 F.2d 1233, 1237 (10th Cir. 1990). The Supreme Court in *Burger King* "rejected the notion that personal jurisdiction might turn on 'mechanical' tests . . . or on 'conceptualistic . . . theories of the place of contracting or of performance . . .'" and, instead, "emphasized the need for a 'highly realistic' approach" that considers factors such as "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Burger King*, 471 U.S. at 478-79; *see Far West*, 46 F.3d at 1075. "A contract alone does not subject a nonresident defendant to the jurisdiction of the subject forum,"

but additional facts that demonstrate the pursuit of an ongoing business relationship will support jurisdiction. *See AST Sports Science, Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1059 (10th Cir. 2008). Because modern communications can eliminate the need for physical presence in the forum, federal courts "'have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.'" *Id.* (quoting *Burger King*, 471 U.S. at 476).

Applying the *Burger King* factors in *Rainbow Travel*, the court of appeals found sufficient contacts with Oklahoma by an owner and operator of a Florida hotel for an action concerning the hotel's failure to honor reservations made by an Oklahoma travel agency. The hotel solicited the agency's business, carried out negotiations with the agency in Oklahoma by correspondence and telephone, sent two contracts to Oklahoma for execution, and expected partial performance in Oklahoma to the extent advance payments were anticipated and made. *Rainbow Travel*, 896 F.2d at 1238. More recently, in *Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1277-78 (10th Cir. 2005), the court of appeals found sufficient contacts with Utah by a French company for an action concerning a contract to supply Asian-manufactured sunglass frames. The French company solicited a Utah corporation's assistance in procuring the frames; necessary services were to be performed in Utah (the choice of a manufacturer, arrangements for manufacture and shipment, and invoices); and fulfilling the contract required a continuing business relationship conducted by telephone, letter, and fax. *Id.*

Similarly here, Atlantique solicited escrow services for the alleged sales contract from a citizen of Oklahoma. While not conclusive, solicitation is "some evidence" of purposeful availment. *Id.* at 1277; *Far West*, 46 F.3d at 1076. Atlantique knew from its dealings with IATS that IATS was located in Oklahoma, and Atlantique negotiated directly with IATS in Oklahoma by electronic

8

means for the performance of, and payment for, escrow services related to the sales transaction in Oklahoma. From Atlantique's prior use of an escrow agent in Oklahoma and creation of two escrow accounts with IATS, it appears that Atlantique contemplated an ongoing relationship with, or at least ongoing utilization of, Oklahoma escrow agents. Atlantique clearly contemplated that necessary steps to complete a sales transaction with Plaintiff would be performed here. Both the required payments and the title documents were to be transferred in Oklahoma. Thus, while the negotiated transaction between Plaintiff and Atlantique may have concerned an aircraft to be delivered in France by a seller located in France to a buyer located in the Dominican Republic, Plaintiff presents evidence of Atlantique's relationship with a resident of Oklahoma that required the provision of necessary services regarding the sale in Oklahoma, such that specific jurisdiction exists in Oklahoma for a controversy arising in part from the performance of those services.

Although this is a close case, the Court concludes that Plaintiff has made a *prima facie* showing that specific jurisdiction exists, that is, Atlantique purposely directed activities at the forum state and this action arises out of and relates to those activities. Under the facts alleged by Plaintiff, Atlantique's contacts with Oklahoma in regard to the alleged sales contract were not "random, fortuitous, or attenuated," but were such that Atlantique "should reasonably anticipate being haled into court" here. *Burger King*, 471 U.S. at 486; *Pro Axess*, 428 F.3d at 1279. Therefore, for purposes of ruling on Atlantique's motion, the Court finds the existence of sufficient contacts to support the exercise of personal jurisdiction over Atlantique in this case.

### 2. Reasonableness

The Court must also consider whether the exercise of jurisdiction is reasonable in light of the circumstances surrounding the case. *Burger King*, 471 U.S. at 477-78 (discussing considerations

9

that might render jurisdiction unreasonable); *see Dudnikov*, 514 F.3d at 1080; *AST Sports*, 514 F.3d at 1061; *Pro Axess*, 428 F.3d at 1279. In view of the determination that Atlantique purposely directed its activities at Oklahoma, Atlantique "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477; *see Dudnikov*, 514 F.3d at 1080; *ATS Sports*, 514 F.3d at 1059; *Pro Axess*, 428 F.3d at 1280. Relevant factors include:

> "(1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies."

*Dudnikov*, 514 F.3d at 1080 (quoting *Pro Axess*, 438 F.3d at 1279-80); *AST Sports*, 514 F.3d at 1061 (same); *see Intercon*, 205 F.3d at 1249. Moreover, the court of appeals has announced: "'[T]he analyses of minimum contacts and reasonableness are complementary, such that the reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on [minimum contacts], the less a defendant need show in terms of unreasonableness to defeat jurisdiction.'" *AST Sports*, 514 F.3d at 1061 (quoting *Pro Axess*, 428 F.3d at 1280, with internal quotation omitted) (alteration by the court in *Pro Axess*); *see Benton v. Cameco Corp.*, 375 F.3d 1070, 1078-79 (10th Cir. 2004). Under the circumstances shown by the existing record, the Court finds that an exercise of personal jurisdiction over Atlantique in Oklahoma would be unreasonable.

### a. Burden on Defendant

"'[T]he burden on the defendant of litigating the case in a foreign forum is of primary concern in determining the reasonableness of personal jurisdiction. . . . When the defendant is from another country, this concern is heightened and "great care and reserve should be exercised" before

personal jurisdiction is exercised over the defendant.'" *Benton*, 375 F.3d at 1079 (quoting *OMI Holdings*, 149 F.3d at 1096 (quoting *Asahi*, 480 U.S. at 114)); *AST Sports*, 514 F.3d at 1061 (same). In this case, as in *Benton*, the burden is significant. Atlantique is a French citizen; it has no office in Oklahoma or anywhere in the United States. Atlantique is a French regional airline that operates charter flights in France and Europe, mostly on behalf of large French companies. It is licensed by the French Ministry of Transport. It has no property or employees in Oklahoma. Atlantique's officers and employees would be forced to travel outside their home country and to litigate this dispute in a foreign forum unfamiliar with French law governing the Heads of Agreement. Thus, this factor weighs in favor of Atlantique and against this Court's exercise of jurisdiction.

    b.  **Oklahoma's Interest in the Dispute**

"'States have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors. The state's interest is also implicated where resolution of the dispute requires a general application of the forum state's laws.'" *Benton*, 375 F.3d at 1079 (quoting *OMI Holdings*, 149 F.3d at 1096); *AST Sports*, 514 F.3d at 162 (same). Plaintiff is not a resident of Oklahoma. The Heads of Agreement requires the application of French law to interpret its provisions. Further, Atlantique cites a provision of the French Civil Code that entitles a French national to be sued in a French court with respect to obligations contracted in a foreign country, even with a foreign citizen.

Plaintiff argues that the underlying wrong, the disbursement of an escrow deposit to which Atlantique allegedly was not entitled, occurred in Oklahoma and that IATS's duties as escrow agent are governed by Oklahoma law. Oklahoma has a substantial interest in resolving the dispute regarding IATS's performance of its duties as escrow agent. As between Plaintiff and Atlantique,

however, Atlantique's conduct was wrongful only if the deposit was refundable under the Heads of Agreement. This is an issue governed by French law and in which Oklahoma has no apparent interest. Plaintiff argues that the application of French law, to the extent it results in a forfeiture of Plaintiff's deposit, would violate a fundamental policy of Oklahoma and therefore, Oklahoma law should govern the "refundability" of the deposit. *See* Pl.'s Resp. Br. [Doc. 27] at 17-18. This argument lacks any basis in the case record. Plaintiff does not alleged in the Complaint that a provision of the Heads of Agreement is unenforceable because it results in a forfeiture or penalty. Plaintiff also argues in its brief that Oklahoma law would apply to any "tort claims" against Atlantique. *See id*. at 17. The nature of any tort claim is unclear, but presumably, this argument is based on allegations of the Complaint that Atlantique misrepresented to IATS that the deposit was non-refundable and wrongfully obtained the deposit. Plaintiff argues in its brief that principles regarding fraud and misrepresentation should apply. However, any misrepresentation claim assumes that Plaintiff is correct in its interpretation of the Heads of Agreement – that the deposit was refundable under the circumstances – which requires an application of French law.

Therefore, the Court finds that Oklahoma has little, if any, interest in the dispute between Plaintiff and Atlantique and that this factor does not weigh in favor of an exercise of jurisdiction.

c. **Plaintiff's Interest in Convenient, Effective Relief**

"This factor hinges on whether the Plaintiff may receive convenient and effective relief in another forum. This factor may weigh heavily in cases where a plaintiff's chances of recovery will be greatly diminished by forcing him to litigate in another forum because of that forum's laws or because the burden may be so overwhelming as to practically foreclose pursuit of the lawsuit."

*Benton*, 375 F.3d at 1079 (internal quotation omitted); *see AST Sports*, 514 F.3d at 1062; *OMI Holdings*, 149 F.3d at 1097.

Atlantique contends Plaintiff could obtain convenient and effective relief in France. Plaintiff does not claim it will suffer any particular hardship or disadvantage if it must sue Atlantique in a French court under the civil law of France. Instead, Plaintiff argues that Atlantique has not shown IATS would be subject to jurisdiction in France or that IATS has agreed to submit to such jurisdiction. Plaintiff asserts an interest in pursuing its action in Oklahoma based solely on "the burden of separately litigating its claims against IATS and Atlantique in Oklahoma and France, with the attendant additional expense." *See* Pl.'s Resp. Br. [Doc. 27] at 19. While the inefficiency of piecemeal litigation is appropriate for consideration, as discussed below, Plaintiff does not deny it can pursue its claim against Atlantique in France. Therefore, this factor does not weigh in favor of this Court's exercise of personal jurisdiction over Atlantique.

### d. Interstate Judicial System's Interest

"This factor asks whether the forum state is the most efficient place to litigate the dispute. Key to the inquiry are the location of witnesses, where the wrong underlying the lawsuit occurred, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation." *Benton*, 375 F.3d at 1080 (internal quotation omitted); *see AST Sports*, 514 F.3d at 1062; *OMI Holdings*, 149 F.3d at 1097.

The parties' disclosed witnesses are located in Oklahoma, the Dominican Republic, and France. As previously discussed, the law of France governs Plaintiff's breach of contract claim against Atlantique, but Oklahoma law governs IATS's performance of escrow services. The wrong underlying the lawsuit – Atlantique's request for Plaintiff's deposit and IATS's decision to disburse

the deposit to Atlantique – occurred in Oklahoma. Further, an exercise of jurisdiction will prevent piecemeal litigation of Plaintiff's claims against Atlantique and IATS in separate cases in two different forums. Therefore, this factor weighs against Atlantique's position and in favor of exercising jurisdiction in Oklahoma.

        e.        **Social Policy Interests**

"The fifth factor of the reasonableness inquiry focuses on whether the exercise of personal jurisdiction by [the forum] affects the substantive social policy interests of other states or foreign nations. The Supreme Court has cautioned that great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." *Benton*, 375 F.3d at 1080 (internal quotation omitted); *see AST Sports*, 514 F.3d at 1062; *OMI Holdings*, 149 F.3d at 1097-98; *see also Asahi*, 480 U.S. at 115. Thus, this Court must look closely at the extent to which an exercise of personal jurisdiction over Atlantique in Oklahoma would interfere with France's interests. "Relevant facts include 'whether one of the parties is a citizen of the foreign nation, whether the foreign nation's law governs the dispute, and whether the foreign nation's citizen chose to conduct business with a forum resident.'" *Benton*, 375 F.3d at 1080 (quoting *OMI Holdings*, 149 F.3d at 1098); *AST Sports*, 514 F.3d at 1063 (same).

Because Atlantique is a French citizen and the Heads of Agreement is governed by French law, this case implicates France's sovereign interest in interpreting its laws and resolving disputes involving its citizens. *See Benton*, 375 F.3d at 1080; *OMI Holdings*, 149 F.3d at 1098. Of course, Atlantique chose to do business with an Oklahoma resident when it agreed to utilize IATS to provide escrow services. Here, as in *Benton*, however, France's policy interest is substantial and Atlantique's contacts with Oklahoma were limited, consisting of a few email messages, wire

transfers of funds, and engagement of an escrow agent. Therefore, the Court finds an exercise of jurisdiction would affect France's policy interests and, thus, this factor weighs in favor of Atlantique and against an exercise of jurisdiction.

**Conclusion**

Due to the limited extent of Atlantique's contacts with Oklahoma, and because only one of the reasonableness factors weighs in favor of exercising jurisdiction over Atlantique in Oklahoma, the Court finds that an exercise of personal jurisdiction over Atlantique in this action is unreasonable and inconsistent with traditional notions of fair play and substantial justice. Therefore, Plaintiff's action against Atlantique should be dismissed for lack of personal jurisdiction.

IT IS THEREFORE ORDERED that Defendant Atlantique Air Assistance's motion to dismiss for lack of personal jurisdiction [Doc. No. 23] is GRANTED. Defendant Atlantique Air Assistance is DISMISSED without prejudice pursuant to Fed. R. Civ. P. 12(b)(2).

IT IS SO ORDERED this 28th day of April, 2010.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE